IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| PAMELA S. SONGER, | Civil Action No. 3:09-01743-DCN-JRM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

## **ADMINISTRATIVE PROCEEDINGS**

Plaintiff protectively filed for DIB on October 5, 2005, with an alleged onset of disability of September 25, 2004. After her application was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge (the "ALJ"). Plaintiff appeared and testified at the hearing held on January 16, 2008, at which a vocational expert ("VE"), also appeared and testified. On March 20, 2008, the ALJ issued a decision finding Plaintiff was not disabled because, based on Plaintiff's residual functional capacity and the testimony of the VE, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. See 20 C.F.R. § 404.1520(g)(1).

Plaintiff was 49 years old on the date she alleged she became disabled and 52 years old on the date of the ALJ's decision. (Tr. 18, 141). She has a high school education and past work experience which includes work as a store manager. Plaintiff alleged disability due to fibromyalgia, depression, chronic pain syndrome, and degenerative disc disease. (Tr. 140).

The ALJ found (Tr. 12, 18, 19):

1. The claimant met the insured status requirements of the Social Security Act through March 30[sic], 2007.

2. The claimant has not engaged in substantial gainful activity since September 25, 2004, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following severe impairments: fibromyalgia, arthritis, and depression (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to stand, sit, and walk six hours each in an eight-hour workday with the option of sitting or standing at her own will; to frequently lift and carry 10 pounds with a heaviest weight lifted occasionally of 20 pounds; to frequently bend and stoop; and to perform unskilled work not requiring frequent public interaction; not requiring work at heights or around dangerous moving machinery; and not requiring more than occasional stooping, kneeling, crouching, squatting, crawling, or bending.

5.[sic] The claimant is unable to perform any past relevant work (20 CFR 404.1565).

6. The claimant was born on March 25, 1955 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a

2

> finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, from September 25, 2004, through March 31, 2007, the date last insured (20 CFR 404.1520(g)).

On May 20, 2009, the Appeals Council denied Plaintiff's request for review (Tr. 1), thereby making the determination of the ALJ the final decision of the Commissioner. Plaintiff then filed this action on June 30, 2009.

## **SCOPE OF REVIEW**

The Social Security Act (the "Act") provides that DIB shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. 42 U.S.C. § 423(d)(1)(A).[1]

In evaluating whether a claimant is entitled to disability benefits, the ALJ must follow the five-step sequential evaluation set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an

---

[1] The regulations applying this section are contained in the Code of Federal Regulations (C.F.R.) at Title 20,"Employees' Benefits." All regulatory references herein will be to the 2007 edition of Title 20.

impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id.

The scope of judicial review by the federal courts in disability cases is narrowly tailored. Consequently, the only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence is:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

4

**DISCUSSION**

In her brief before the court, Plaintiff alleges that the ALJ erred in: (1) failing to find several other impairments to be "severe"; (2) evaluating her impairments under the wrong listing; (3) failing to consider her impairments in combination; and (4) improperly assessing physicians' opinions. The Commissioner contends that the ALJ's decision is supported by substantial evidence and free of legal error.

**A. Severity**

Plaintiff claims that the ALJ erred in failing to find that several of her impairments (degenerative disk disease, sciatica, radiculopathy, and neuropathy) were severe. It is the claimant's burden to prove that he or she suffers from a medically severe impairment. Bowen v. Yuckert, 482 U.S. 137, 145 n.5 (1987). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A non-severe impairment is defined as one that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." Id. § 404.1521(a).

Severity, however, is not the only requirement at step two: the impairment must also "meet[] the duration requirement in § 404.1509."[2] Id. § 404.1520(a)(4)(ii). Plaintiff's diagnoses of sciatica, radiculopathy, and neuropathy do not extend that far, and apparently were resolved with her microdiskectomy of October 28, 2005. Plaintiff's medical records reveal a first diagnosis of sciatica on September 7, 2005; of "probable" radiculopathy on September 15, 2005; and of possible

---

[2]"Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement." 20 C.F.R. § 404.1509.

5

neuropathy on September 13, 2005. None of these diagnoses appear after Plaintiff's surgery. Cf. id. 404.1520(a)(4)(ii) (requiring that the severe impairment be "medically determinable").

The ALJ went into considerable detail when discussing Plaintiff's back issues. (See Tr. 13-16). Plaintiff's primary care physician on October 6, 2004, Lorri Ayers, mentioned that Plaintiff had studies dating from July 2002 which revealed degenerative disk disease ("DDD"). (See Tr. 218). But at that time, Plaintiff had no complaints associated therewith, nor when she visited Dr. Ayers on October 27, 2004. (See Tr. 217).

On December 10, 2004, however, Plaintiff complained to Dr. Ayers of right lower back pain into her right knee of one month's duration, and told Dr. Ayers of two recent deaths in her family. (Tr. 214). Dr. Ayers's examination was normal except for tenderness to palpation of the lower lumbar spine on the right. Dr. Ayers diagnosed only severe sleep disorder, hyperlipidemia, and medication follow-up. She prescribed Ambien, Klonopin, and Cymbalta; issued an oxygen saturation monitor; and encouraged Plaintiff to get counseling. No further reference was made to Plaintiff's pain complaints or to specific treatment therefor.

When Plaintiff saw Dr. Ayers in January 2005, she was feeling "remarkably better," with decreased myalgias, arthralgias, and fatigue; there was no mention of back or leg pain. (Tr. 213). Plaintiff returned in March for a two-month re-check, and felt "overall much better" with "no real complaints." (Tr. 212). Plaintiff still had neither back nor leg complaints when she saw Dr. Ayers in May 2005 after falling off of a step and hitting her right ankle and right ribs. (See Tr. 211). At her three-month re-check in June, she was "[o]verall doing well," and in August, "[o]verall feeling well." (Tr. 209, 210).

6

Not until September 15, 2005, did Plaintiff, after "[s]he had been doing some heavy lifting and water skiing, had driven also from Charleston back and forth [from Charlotte, North Carolina]," complain to Dr. Ayers of lower back and hamstring pain. (Tr. 207). In the preceding two weeks, she had consulted with orthopedists James Pressly and John Ternes regarding pain in her posterior right thigh. (Tr. 184-87). The medication prescribed by the orthopedists only helped minimally, so Dr. Ternes sent Plaintiff for magnetic resonance imaging. (Tr. 181).

After participating in four physical therapy sessions, Plaintiff decided to undergo surgery. (See Tr. 187). On October 28, 2005, Plaintiff underwent an L5-S1 microdiskectomy surgery on the right for treatment of a herniated disk at L5-S1 on the right. (Tr. 229). Later that day, she was discharged home. (Tr. 228). As summarized by the ALJ,

> When seen on November 17, 2005, it was noted that claimant had done remarkably well since her back surgery and had had complete resolution of her back and leg pain. Her examination showed excellent strength throughout her lower extremities. She was encouraged to slowly increase her activities. On January 10, 2006, it was noted that claimant was doing well. She reported some stiffness and a little bit of right buttock pain from time to time, but overall she was much improved.

(Tr. 15; see also Tr. 278, 280).

When Plaintiff reported for a consultative examination three weeks later, she complained of continued pain, but Dr. Earl Epps, Jr., noted that she was in no distress and was able to get onto and off of the exam table and undress herself without assistance. (Tr. 241). She was not using any device to assist with ambulation and her gait was normal. (Tr. 242). Plaintiff exhibited normal muscle strength in her lower extremities and straight leg raising was negative. Ranges of motion in Plaintiff's hips, ankles and feet were normal, and her spinal ranges were just short of normal. Plaintiff's extremities showed no edema and there was no evidence of major joint swelling or erythema. Her bilateral peripheral pulses were palpable and equal, and her deep tendon reflexes were

7

normal bilaterally. Plaintiff suffered from no loss of motor, sensory, or coordination function. Despite her complaints of pain with movement, she moved about the examination room without major difficulty. (Tr. 243). Plaintiff was not taking any prescription pain medication (see Tr. 241), and told Dr. Epps that she only occasionally took over-the-counter analgesics for pain relief (Tr. 243).

Although Plaintiff experienced occasional flare-ups (see Tr. 277, 284, 291), she saw no doctor from May 16, 2006, through her first visit with Dr. Georgia Roane on August 23, 2007, a date after her date last insured. Not even at this late date was Plaintiff taking prescription pain medication, nor did she complain at this, or at her other three visits with Dr. Roane, of back pain. (See Tr. 326-30). Because Plaintiff's medical records fail to establish that her DDD significantly limited her ability to do basic work activities for at least twelve months, the ALJ did not err in not finding it severe. Cf. 20 C.F.R. § 404.1512(a) (placing the burden upon the claimant to provide medical evidence about the existence and severity of his claimed impairments, and also how those impairments affect his functioning); Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003) ("the mere presence of a condition is not sufficient to make a step-two showing").

### B. The Listings[3]

Plaintiff complains that the ALJ erred in not evaluating her rheumatoid arthritis to see if it met Listing 14.09. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is not enough that

---

[3]The "Listings," found at 20 C.F.R. part 404, subpart P, appendix 1 (part A), "is a catalog of various disabilities, which are defined by 'specific medical signs, symptoms, or laboratory test results.'" Bennett v. Sullivan, 917 F.2d 157, 160 (4th Cir. 1990) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990)). When a claimant satisfies a Listing by meeting all its specified medical criteria, he presumably qualifies for benefits. See id.

the impairment have the diagnosis of a listed impairment; the claimant must also have the findings shown in the listing of that impairment. 20 C.F.R. § 404.1525(d); see Bowen v. Yuckert, 482 U.S. 137, 146 and n.5 (1987) (noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. Medical equivalence can be found if the impairment is at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 404.1526(a).

The undersigned finds no error, as the ALJ addressed Listing 14.09 later in the decision (outside of her step two discussion). (See Tr. 17). Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005) ("[A]n ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment."); see also Rice v. Barnhart, 384 F.3d 363, 370 & n.5 (7th Cir. 2004); Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). In discussing Dr. Roane's opinion that Plaintiff met the Listing, the ALJ noted its requirements of a "[h]istory of joint pain, swelling, and tenderness, *and* signs on current physical examination of joint *inflammation or deformity* in *two or more major joints* resulting in inability to ambulate effectively or inability to perform fine and gross movements effectively." 20 C.F.R. Pt. 404, subpt. P, app. 1, § 14.09A (emphases added). The ALJ correctly pointed out that this conclusion was both "inconsistent with, and not supported by her physical findings in her treatment records." (Tr. 17).

The ALJ noted that Dr. Roane described Plaintiff's joint tenderness as "mild," and stated that her arthritis was "under good control" with Plaquenil. (Tr. 18 (citing Tr. 326-27)). The doctor also

said that Plaintiff's wrists moved well with no significant tenderness. (Id.; Tr. 326)). The ALJ further pointed out that there was *no* showing in the documentary evidence that Plaintiff had either an inability to effectively ambulate or perform fine and gross movements with her upper extremities. (Tr. 18). In fact, Dr. Epps, the consultative examiner, found just the opposite. (See supra pp. 7-8; Tr. 242-43). Thus, Plaintiff's claim is without merit.

**C. Combination of Impairments**

Plaintiff contends that the ALJ failed to properly consider whether her combined impairments are of equal medical significance to a listed impairment. Medical equivalence can be found if the medical findings are at least equal in severity and duration to that of a listed impairment. 20 C.F.R. § 404.1526(a). In evaluating a claim for disability insurance benefits, the Commissioner is required to consider the combined effects of a claimant's impairments, and he must adequately explain his evaluation of the combined effect of those impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Hines v. Bowen, 872 F.2d 56 (4th Cir. 1989); Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir. 1985). These factors are mandated by Congress's requirement that the Commissioner consider the combined effect of an individual's impairments, 42 U.S.C. § 423(d)(2)(B), and the general requirement by the courts that an ALJ explicitly indicate the weight given to all relevant evidence, Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987); see also Hines, 872 F.2d at 59.

The ALJ properly considered all of Plaintiff's impairments and their combined effects. She specifically concluded that Plaintiff's impairments, either singly or in combination, did not meet or medically equal one of the listed impairments. (Tr. 12). The ALJ went on to discuss all of Plaintiff's impairments. (Tr. 13-18). Cf. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992) (ALJ sufficiently considered impairments in combination where he separately discussed each impairment,

the complaints of pain and daily activities, and made a finding that claimant's impairments did not prevent the performance of past relevant work). Finally, the ALJ found:

> Dr. Roane described claimant's joint tenderness in November 2007 as mild and that her rheumatoid arthritis was under good control with Plaquenil. In December, Dr. Roane indicated claimant's wrists moved well with no significant tenderness. Furthermore, there is no showing in the documentary evidence that the claimant had any inability to ambulate effectively or any inability to perform fine and gross movements effectively with her upper extremities, as those terms are defined in the regulations (Exhibit 20F, pgs., 5-6)[.]
>
> Claimant takes no prescription medications for pain. She also reported doing a variety of daily activities to several doctors; yet testified to hardly any. I carefully considered claimant's medically determinable impairment of depression, and I find that limiting her to unskilled work not requiring frequent interaction with the public satisfies the limitations she has from it, looking at the evidence in a light most favorable to the claimant. She was placed on anti-depressants, anti-anxiety medicine, and sleep medicine for her fibromyalgia and these medicines keep it under control, except for occasional flares.

(Tr. 18). This discussion encompasses evidence regarding each of Plaintiff's limitations as established by her medical records.

The ALJ also considered Plaintiff's limitations from her combination of impairments in her hypothetical to the VE. Specifically, the ALJ asked the VE to consider a claimant of Plaintiff's age, education, and work history who was "limited to unskilled work not requiring frequent public interaction, not involving work at heights or around dangerous, moving machinery, not requiring more than occasional stooping, kneeling, crouching, crawling, squatting, bending." (Tr. 39). She later added a sit/stand option to the hypothetical. (Tr. 40).

Furthermore, the undersigned finds relevant the discussion in Washington v. Commissioner of Social Security, 659 F. Supp. 2d 738 (D.S.C. 2009), as follows:

> Critically, however, the plaintiff, herself, has not explained what Listing she would have satisfied had the impairments been viewed more expressly in combination. The plaintiff cannot prevail on this objection because she has not

presented evidence that the combined effects of her impairments would equal any Listing. The United States Supreme Court has stated, "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 531, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (emphasis added)[4] (quoting 20 CFR § 416.926(a)). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." Id. In other words, the combination of impairments does not meet a Listing simply by virtue of the overall functional impact of those impairments. The plaintiff must still demonstrate how the impairments, when taken together, meet the specific criteria of the Listing in question.

> The plaintiff has failed to so demonstrate on appeal. The plaintiff has not identified to which specific listing her combined impairments are equivalent nor has she explained how her impairments meet the specific criteria of any such listing. Even if the ALJ did not properly consider evidence of the plaintiff's impairments in combination,[5] the plaintiff has made no attempt to demonstrate how such consideration would have demonstrated that the criteria of . . . some other Listing was satisfied. . . . Therefore, any error of the ALJ in considering or explaining the combined effects of the plaintiff's impairments is harmless, in the absence of evidence that the outcome would have been different. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994).

Id. at 754 (footnotes added). See also Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004) ("The burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing.") (citing Sullivan, 493 U.S. at 530-31); Maggard v. Apfel, 167 F.3d 376, 380 (7th Cir. 1999) (same). For the reasons discussed above, the undersigned finds no merit in Plaintiff's argument.

**D. Opinion Evidence**

Plaintiff alleges that the ALJ's decision is legally flawed because the ALJ disregarded the opinions of her treating physicians when there was no persuasive evidence to contradict them.

---

[4] No emphasis is evident in the published version of this case.

[5] The undersigned has not found here that such is the case.

12

Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight but may be disregarded if persuasive contradictory evidence exists to rebut it. Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 20 C.F.R. § 404.1527(d)(2). "Courts often accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005)(quoting Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (footnote omitted)). An ALJ, therefore, must explain his reasons for disregarding the opinion of a treating physician. E.g., Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (noting the ALJ must provide specific and legitimate reasons for disregarding treating physician's opinion); Holmstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001) ("Whether the weight accorded the treating physician's opinion by the ALJ is great or small, the ALJ must give good reasons for that weighting."); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (The ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."); see also DeLoatche v. Heckler, 715 F.2d 148, 150-51 (4th Cir. 1983) (discussing the ALJ's general duty of explanation).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). The Court in Craig found by negative implication that, if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.

Plaintiff first points to Dr. Ayers's statement on October 6, 2004, that "I do not feel that this patient would do well attempting to go back to work. In fact, at this point it is really not an option." (Tr. 219). The ALJ gave "little weight" to this opinion because the doctor's records did not corroborate it and her exam findings were "relatively benign." (Tr. 17). Plaintiff claims that the ALJ failed to substantiate his decision, but the undersigned finds otherwise. The ALJ noted that, in December 2004, Dr. Ayers's exam was within normal limits except for tenderness to palpation of Plaintiff's right lower lumbar spine. (Tr. 13; see also Tr. 214). In January 2005, Dr. Ayers noted that Plaintiff's depression was markedly improved. (Tr. 213). "In March 2005, claimant had lost weight, reported feeling much better, and had no real complaints." (Tr. 13; see also Tr. 212).

The ALJ further discussed Dr. Ayers's June 2005 record, where she wrote that Plaintiff's fibromyalgia was stable, her mood was better, and she was, overall, doing well. (Tr. 13; see also Tr. 210). Plaintiff told Dr. Ayers in August that she had no complaints, was feeling well overall, and her moods were good. (Tr. 209). In September, Dr. Ayers noted Plaintiff's activities of water skiing, heavy lifting, and driving back and forth between Charlotte and Charleston. Prior to Plaintiff's back surgery, Dr. Ayers noted that her fibromyalgia was "very well-controlled on Cymbalta." (Tr. 199; see also Tr. 14).

After her October 2005 surgery, Plaintiff did not see Dr. Ayers again until April 21, 2006[6]; her physical examination was again within normal limits. (See Tr. 16, 291). At Plaintiff's final visit with Dr. Ayers, in May, Plaintiff reported that she was better. (Tr. 284). Dr. Ayers concluded that Plaintiff's fibromyalgia was suboptimally controlled, but that her insomnia was stable. (Id.; see also

---

[6]The ALJ mistakenly attributes the surgeon's January 11, 2006 medical record to Dr. Ayers.

14

Tr. 16). The undersigned finds that the ALJ indeed provided substantial evidence to support her assessment.

Plaintiff alleges that the ALJ's evaluation of Dr. Roane's opinion was rejected "in the same conclusory fashion." (Pl.'s Br. 13). Review of the ALJ's decision, reveals that she amply supported her decision to discount Dr. Roane's opinion. As discussed above, the ALJ summarized the findings in Dr. Roane's records which belie her opinions that Plaintiff's impairments meet Listing 14.09 and that Plaintiff is incapable of "even sedentary work." (Id.). Moreover, Dr. Roane rendered her opinions almost eight months after Plaintiff's date last insured, and there is no support for her opinions in Plaintiff's contemporaneous medical records.

Finally, Plaintiff asserts that the ALJ failed to properly consider the opinion of a state agency consultant (Dr. Ben Williams) that she would be "Moderately Limited" in her abilities "to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; and "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 259-60). ALJs must consider and evaluate such an opinion as that of a "highly qualified physician[]" who is an "expert[] in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p, 61 Fed. Reg. 34,466-01, 34,467. Contrary to Plaintiff's argument, the ALJ expressly stated that she had "considered the findings of fact and opinions" of the state agency physicians and had "given their findings significant weight to the extent their opinions are consistent with the record when considered in its entirety." (Tr. 18).

Dr. Williams concluded, however, that even with these limitations in the category of "Sustained Concentration and Persistence," Plaintiff would be "able to sustain concentration and persist at tasks for 2 hour periods of time at a simple job." (Tr. 261). The ALJ, in turn, reflected this recommendation in restricting Plaintiff to "unskilled"[7] work. (Tr. 12). Clearly, the ALJ not only considered, but adopted, this consultant's opinion.

## **CONCLUSION**

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, supra. It is, therefore,

---

[7]The regulations define "unskilled work" as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a).

RECOMMENDED that the Commissioner's decision be affirmed.

Joseph R. McCrorey
United States Magistrate Judge

July 13, 2010
Columbia, South Carolina